UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TROY ANDREW COHOON,
#311317,

    Petitioner,                                        Civil Action No. 19-CV-11952

vs.                                                            HON. BERNARD A. FRIEDMAN

KEVIN LINDSEY,

    Respondent.
_____/

## OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS

Petitioner has filed the instant habeas case under 28 U.S.C. § 2254. He is serving a sentence of 106-360 months for his Calhoun Circuit Court jury trial conviction of one count of first-degree home-invasion, Mich. Comp. Laws § 750.110(a). Petitioner raises three claims: (1) the prosecutor violated petitioner's due process rights by impeaching his trial testimony with his post-Miranda silence, (2) the trial court erroneously denied petitioner's motion for a mistrial based on the prosecutor's discovery order violation, and (3) petitioner's right to due process was violated by the admission of identification testimony tainted by an unduly suggestive pretrial identification procedure. For the reasons stated below the Court shalll deny the petition, deny a certificate of appealability, and deny leave to appeal in forma pauperis.

**I.** *Background*

The charges in this matter stem from three individuals breaking into a Battle Creek area home on Easter Day afternoon of 2015 and stealing various items of personal property. The homeowner happened to be present and in the shower at the time. He emerged from the bathroom

and briefly confronted the perpetrators before they made their escape on foot. Police officers were dispatched to the scene within minutes, and shortly thereafter three individuals matching the description given by the victim were arrested a few blocks away. Items taken from the home were found in the possession of one of the individuals. The victim was driven to the location of the arrest where he identified the three arrested individuals, including petitioner, as the perpetrators of the crime.

At petitioner's jury trial, Jimmy Brown testified that he was showering at his home on the date in question while his girlfriend and her son were out shopping. Brown heard noises in the home while showering, and he thought his girlfriend must have forgotten something and returned. Brown got out, wrapped a towel around his waist, and called out. When he did not hear any response, he walked into the master bedroom and came face-to-face with a teenaged woman who appeared to be going through some things from his closet laid out on his bed. Brown told the woman he was going to call the police. Brown heard a male voice shouting from behind him that he was leaving. Brown then saw a man emerge from behind him, push him to the ground, and run out of the house. The young woman followed.

Alhough he was not wearing his glasses, Brown testified that he got a good look at the man's face, though he only saw it for "a second or two." ECF No. 8-5, at 48. As Brown stood, a third individual, a teenaged boy, emerged from a second bedroom carrying a backpack that belonged to Brown's stepson. Brown pulled the backpack away, but the teen ran from the house behind the other two. Brown called his girlfriend and asked her to call police. An officer arrived at the house about ten minutes later.

Deputy Mark Elferdink testified at trial that he responded to the call and arrived at

2

the scene around 1:50 p.m. Brown described the three suspects as (1) a 5'7" adult male approximately 18 years old wearing blue jeans, (2) a 5'5" male approximately 13 or 14 years old, and (3) a 5'7" female approximately 15 years old. After speaking with Brown, Elferdink radioed the descriptions to dispatch. Brown told the deputy that a camera, jewelry, and a set of headphones were missing from the house.

Lieutenant Aaron Wiersma testified he was on duty that afternoon and received the dispatch about the home invasion. Wiersma patrolled the area and stopped one adult male, later identified as petitioner, who was standing with a teenaged couple. The male juvenile was petitioner's nephew Trever, and the female was Trever's girlfriend, Sunshine. The stop took place approximately two hours after the incident.

Wiersma testified that petitioner told him that he could not speak with the juveniles. Petitioner appeared agitated; fearing that he would flee, Wiersma placed petitioner under arrest. Wiersma contacted Elferdink and told him that he had apprehended suspects. Elferdink arrived and attempted to speak with petitioner, but petitioner told him he was not going to speak with him. Elferdink searched a backpack found on the male juvenile suspect and located items stolen from the victim's home, including easily identifiable rings, a camera, and headphones.

At around 3:30 p.m. Brown was picked up by Wiersma to participate in an on-the-scene identification. During their two- to three-minute drive, Wiersma informed Brown that "they had captured some suspects and wanted [him] to identify [them] if possible." *Id*. at 34-35. Brown told Wierzma that he recognized all three of the individuals as the ones who were in his home, and that Petitioner was the one who pushed him to the ground. *Id*. at 36. Wiersma's vehicle was parked "five feet or less" from petitioner during the identification procedure. *Id*. 66-67.

3

Petitioner testified on his own behalf that he was not involved in the home invasion. He testified that he met with his nephew and his girlfriend at about 12:30 p.m. that day, but only for ten to fifteen minutes. He claimed that they then separated, and he met them at a party store around 2:30 p.m. From there, they walked to Kellogg Community College, and then they were walking along a road when Lieutenant Wiersma stopped them. Petitioner claimed that when he told the officer he could not speak with the juveniles, the officer became upset and handcuffed him. Petitioner testified that he was 32 years old and only 5'4." Petitioner also testified that he has noticeable tattoos on his right forearm and left hand, but the victim never testified to seeing any tattoos on any of the perpetrators. Over defense objection, petitioner was questioned by the prosecutor on cross-examination about his failure to come forward and tell his story to the police or prosecution until the day of trial. *Id*. at 102-104.

Additionally, during the cross-examination Deputy Elferdink, defense counsel asked questions about a partial shoe print found by the back door of the victim's home. Contrary to the police report, Elferdink surprised defense counsel by testifying that he compared the footprint with petitioner's shoes, and he thought that they matched. *Id*. at 73. The comparison was indicated in a supplemental police report that had not been turned over to defense counsel. *Id*. at 73-74. This prompted a motion for mistrial. The trial court denied the motion, accepted the representation by the prosecutor that there had been no malicious intent, and instructed the jury that they were not permitted to consider the testimony regarding the shoe prints. *Id*. 76-78.

Following his conviction and sentence, petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals, raising three claims:

> I. The prosecution's use of Appellant's post-arrest, post-Miranda pre-trial silence to impeach his trial testimony violated his right to

4

due process and Fifth Amendment right to silence.

II. The circuit court's denial of Appellant's motion for a mistrial based on the prosecution's failure to disclose a supplemental police report claiming that Appellant's shoes matched a footprint on the door of the home violated his right to a fair trial.

III. Appellant's right to due process of law was violated by the admission of testimony concerning the identification of Appellant, which was the product of an unduly suggestive and impermissible on-the-scene identification, or, in the alternative, defense counsel was constitutionally ineffective for failing to file a motion to suppress the testimony concerning the identification of Appellant which resulted from that identification procedure.

The Michigan Court of Appeals denied petitioner's delayed application for leave to appeal "for lack of merit in the grounds presented." ECF No. 8-8. Petitioner then sought leave to appeal in the Michigan Supreme Court, raising the same three issues. The Michigan Supreme Court denied the application because it was "not persuaded that the questions presented should be reviewed." *People v. Cohoon*, 908 N.W.2d 550 (Mich. 2018) (Table).

## II. *Standard of Review*

28 U.S.C. § 2254(d) curtails federal habeas review of state convictions for claims adjudicated on the merits by state courts. A habeas petitioner must generally demonstrate that the state court adjudication was "contrary to" or "involved an unreasonable application of" clearly established Supreme Court law. *Id*. A decision is "contrary to" clearly established Supreme Court law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. Under this standard, a federal habeas

court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In the present case, this standard of review applies to petitioner's claims because the Michigan Court of Appeals rejected Petitioner's application for leave to appeal "for lack of merit in the grounds presented," which counts as an adjudication on the merits. *See Werth v. Bell*, 692 F.3d 486, 492-94 (6th Cir. 2012).

**III.** *Analysis*

A. Use of Petitioner's Post-Arrest Silence

Petitioner first argues that the trial court erred in allowing admission of testimony and argument that petitioner did not offer the police the exculpatory explanation of events he testified to at trial. Respondent asserts any error was harmless.

It is a violation of the Due Process clause of the Fourteenth Amendment for the prosecution to use a defendant's post-Miranda silence to impeach a defendant's exculpatory testimony. *Doyle v. Ohio*, 426 U.S. 610, 619 (1976). "*Doyle* bars the use against a criminal defendant of silence maintained after receipt of governmental assurances." *Anderson v. Charles*, 447 U.S. 404, 408 (1980).

In the present case, after petitioner was given Miranda warnings, he indicated he did not want to speak to the police. Yet at trial, the prosecutor cross-examined him on his failure to assert his trial defense to police: "And at what point did you tell the officer, hey I wasn't involved;

6

I wasn't even there?" ECF 8-5, at 109; "And you didn't feel it was important at any time until today, sitting here, to mention to anyone…." *Id*. at 110. Petitioner's counsel objected, but inexplicably, the trial court allowed this line of questioning to continue, stating, "Yes, he does [have a constitutional right to remain silent]. But that doesn't foreclose the opportunity to speak with them had he chosen to do so. I'll permit you to ask questions." *Id*. The prosecutor continued to pursue the line of questioning for another page in the trial transcript, with petitioner explaining that he did not speak to police because that would have required him to "throw his nephew under the bus," and he did not want to do that. *Id*., at 104.

This was a clear violation under *Doyle*. Nonetheless, the violation does not warrant habeas relief given the very strong evidence of petitioner's guilt. A constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Fry v. Pliler*, 551 U.S. 112, 117-18 (2007) (confirming that the *Brecht* standard applies in "virtually all" habeas cases). Harmless error analysis applies to *Doyle*-error claims. *See Brecht*, 507 U.S. at 637 (state's improper use of defendant's post-Miranda silence to impeach defendant's claim of accident was harmless as it did not have a substantial or injurious effect or influence upon the jury's verdict); *Billingslea v. Jackson*, 83 F. App'x 33, 40 (6th Cir. 2003).

The jury would have certainly found petitioner guilty of the charged offense whether or not the prosecutor made improper use of his post-Miranda silence. The victim described finding three people in his home stealing property. Three people matching the general description of the perpetrators (despite some minor differences) were found walking on a road nearby in possession of the stolen items. Petitioner's trial defense was that he was with the other two individuals both

7

before and after the incident, but not during it. That defense had no chance of success. Respondent states it well: "[Petitioner] needed the jury to find it reasonable to believe that he was with Trevor and Sunshine just before the home invasion, then they parted ways, then Trevor and Sunshine met up with some other man who looked just like [Petitioner] before carrying out the home invasion. Then it must be reasonable to suppose that they left this other man (who did not take any of Brown's belongings), then met back up with [Petitioner]." ECF No. 7, at 17-18. Given the significant evidence of petitioner's guilt, the *Doyle* error did not have a substantial and injurious effect or influence in determining the jury's verdict. Habeas relief is not warranted on this claim.

B. Discovery Violation

Petitioner's second claim asserts that the trial court erred in failing to grant a mistrial after a police officer's surprise testimony that he had matched a footprint found at the victim's home to petitioner's shoe. The comparison was noted in a supplemental report that was not provided to defense counsel, in violation of the court's discovery order. The trial court acknowledged the error, but rather than grant a mistrial, it instructed the jury to disregard the testimony.

No constitutional right clearly established by Supreme Court law was violated by the discovery violation. It is well settled that there is no general constitutional right to discovery in a criminal case. *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) (denying due process claim of a defendant who was convicted with aid of surprise testimony from an accomplice who was an undercover agent); *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir.1988) (citing *Weatherford*). A claim that a prosecutor violated state discovery rules is thus not cognizable in federal habeas review, because it is not a constitutional violation. *See Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002).

Further, any prejudice caused by the surprise testimony was cured by the trial court's corrective instruction to the jury not to consider the testimony. A jury is presumed to have followed a trial court's instructions. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000). The Court sees no reason why the jury would have been unable to follow the curative instruction here.

C. Identification Testimony

Petitioner's third claim asserts that he was subject to an unduly suggestive identification procedure when police transported the victim to the location of the suspects' arrest and was asked if he could identify them as the three perpetrators.

An Identification procedure raises due process concerns "only when law enforcement officers use [one] that is both suggestive and unnecessary." *Williams v. Bauman*, 759 F.3d 630, 638 (6th Cir. 2014) (quoting *Perry v. New Hampshire*, 565 U.S. 228, 238-39 (2012)). Unnecessary suggestiveness generally depends on whether police conduct directed the witness's attention to a suspect. *Howard v. Bouchard*, 405 F.3d 459, 469-70 (6th Cir. 2005). If the defendant proves that the identification procedures were impermissibly suggestive, the court "must determine whether, under the totality of the circumstances, the testimony was nevertheless reliable." *United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992). In considering the "totality of the circumstances," five factors must be weighed in determining the reliability of the identification: (1) the opportunity of the witness to view the perpetrator during the crime; (2) the witness's degree of attention to the perpetrator; (3) the accuracy of the witness's prior descriptions of the perpetrator; (4) the level of certainty demonstrated by the witness when identifying the suspect; and (5) the length of time between the crime and the identification. *United States v. Crozier*, 259 F.3d 503, 510 (6th Cir.2001).

The one-on-one procedure used in the present case was certainly more suggestive

9

than a police station line-up. But the state courts could nevertheless reasonably find on this record that under the totality of the circumstances that the identification of Petitioner was reliable. During the home invasion, victim had a brief but good opportunity to observe petitioner when petitioner walked past him in the hallway and pushed him to the ground. The victim was obviously focused on the strangers who had invaded his home, and he testified that he got a good look at petitioner's face. The accuracy of the victim's description is good given the circumstances. He identified the two teen perpetrators well, he was only off by perhaps 2" on petitioner's height, and the largest error was his belief that petitioner was more than ten years younger than he actually was. Nevertheless, the victim testified that he was "positive" and harbored "no doubt" that petitioner was the man who pushed him to the ground. ECF 8-5, at 28. Finally, the identification occurred a few blocks away from the victim's home within a very short period of time after incident.

It was reasonable for the state court to reject this claim on the merits. Indeed, the Sixth Circuit has done so in similar circumstances. *See Bruner v. Perini*, 875 F.2d 531, 534-35 (6th Cir.1989) (no due process violation where bank employee who had face-to-face contact with a robber and gave a description of the robber to police was taken to the scene of apprehension of a suspect about half hour after the robbery); *Stidham v. Wingo*, 482 F.2d 817, 818-19 (6th Cir.1973) (police permissibly brought robbery victim directly to view suspect apprehended shortly after a robbery). Petitioner has failed to demonstrate entitlement to relief with respect to this claim.

The Court concludes that petitioner's claims are without merit. Therefore, the petition in this matter is denied.

**IV.** *Certificate of Appealability*

In order to appeal the Court's decision, petitioner must obtain a certificate of

10

appealability. 28 U.S.C. § 2253(c)(2). The applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). In the present case, jurists of reason would not debate the Court's conclusion that petitioner has failed to demonstrate entitlement to habeas relief with respect to these claims. Therefore, a certificate of appealability is denied.

Further, petitioner is denied permission to appeal in forma pauperis because any appeal would be frivolous. 28 U.S.C. § 1915(a)(3).

**V.** *Conclusion*

For the reasons stated above, the Court denies petitioner's application for a writ of habeas corpus, denied a certificate of appealability, and denies permission to appeal in forma pauperis.

s/Bernard A. Friedman
Bernard A. Friedman
Dated: March 17, 2020     Senior United States District Judge
Detroit, Michigan

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 17, 2020.

| | |
|---|---|
| Troy Andrew Cohoon, 311317<br>G. Robert Cotton Correctional Facility<br>3500 N Elm Ave<br>Jackson, MI 49201-8887 | s/Johnetta M. Curry-Williams<br>Case Manager |